| | |
|---|---|
| **DEBORAH TODD,** *on behalf of herself and all other similarly situated,* | Case No. 3:26-cv-00 |
| Plaintiff, | |
| *v.* | |
| **XSOLIS, INC.,** | **CLASS ACTION COMPLAINT** |
| Defendant. | JURY TRIAL DEMANDED |

Plaintiff Deborah Todd ("Plaintiff"), individually and on behalf of all others similarly situated, through her attorneys, brings this Class Action Complaint against Xsolis, Inc. ("Defendant" or "Xsolis"). Plaintiff alleges the following upon personal knowledge as to her own acts, upon counsel's investigation and facts of public record, and upon information and belief as to all other matters.

## INTRODUCTION

1.      Plaintiff brings this action on behalf of all persons whose Personally Identifiable Information ("PII")[1] and Protected Health Information ("PHI") was entrusted Defendant and that was impacted in a cyber incident (the "Data Breach" or the "Breach"). PII and PHI will be collectively referred to as Private Information herein.

2.      Plaintiff's claims arise from Defendant's failure to properly secure and safeguard Private Information that was entrusted to it, and its accompanying responsibility to store and transfer that information.

---

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.

3.      Defendant is a healthcare AI company based in Franklin, Tennessee, that applies "industry-leading AI and automation to ensure appropriate care settings and accelerate collaboration across a connected network of providers and payers" and intends to create "a more efficient and frictionless healthcare system that supports your clinical staff."[2]

4.      Defendant serves as a vendor for many healthcare providers across the United States.

5.      On January 22, 2026, Defendant detected unauthorized activity resulting from a targeted phishing attack.

6.      On June 5, 2026, Defendant's customer, Virginia Hospital Center Arlington Health System, doing business as VHC Health and Virginia Hospital Center, sent Plaintiff a Notice of Data Breach identifying that VHC Health utilized Xsolis, Inc. as a vendor "to provide certain case and utilization management services."

7.      The June 5, 2026 letter to Plaintiff informed her, following Defendant's investigation into the unauthorized activity on its environment on January 22, 2026, that certain of her information may have been accessed in the Data Breach, including her Social Security Number, date of birth, doctor name, health insurance provider, medical diagnosis information, medical record number, medical treatment dates, and patient ID or account number (also referred herein as "Private Information").

8.      Defendant failed to take precautions designed to keep individuals' Private Information secure.

9.      Defendant owed Plaintiff and Class Members a duty to take all reasonable and

_____

[2] *About Xsolis: Revolutionizing Healthcare*, Xsolis, www.xsolis.com/about (last visited June 11, 2026).

2

necessary measures to keep the Private Information collected safe and secure from unauthorized access. Defendant solicited, collected, used, and derived a benefit from the Private Information, yet breached its duty by failing to implement or maintain adequate security practices.

10. The sensitive nature of the data exposed through the Data Breach means that Plaintiff and Class Members have suffered irreparable harm, since they have lost the ability to control their Private Information and are subject to an increased risk of identity theft.

11. Defendant, despite having the financial wherewithal and personnel necessary to prevent the Data Breach, nevertheless failed to use reasonable security procedures and practice appropriate to the nature of the sensitive, unencrypted information it maintained for Plaintiff and Class Members, causing the exposure of Plaintiff's and Class Members' Private Information.

12. The Data Breach was a direct result of Defendant's failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect Plaintiff's and Class Members' Private Information from a foreseeable and preventable cyber-attack. Defendant could have prevented or mitigated the consequences of the Data Breach by limiting access to sensitive information to only necessary employees, requiring multi-factor authentication to verify access credentials, encrypting data at rest and in transit, monitoring its systems for signs of unusual activity or the transfer of large volumes of data, and regularly rotating passwords.

13. As a result of Defendant's inadequate digital security and notice process, Plaintiff's and Class Members' Private Information was exposed to criminals. Plaintiff and the Class Members have suffered and will continue to suffer injuries including: financial losses caused by misuse of their Private Information; the loss or diminished value of their Private Information as a result of the Data Breach; lost time associated with detecting and preventing identity theft; and theft of personal and financial information.

3

14. Defendant was and is well aware that it is at high risk of attempted cyberattack due to the high value of the sensitive data.

15. Defendant represents on the bottom of its website homepage that, "We take your privacy very seriously."[3]

16. Despite Defendant's awareness of both the value and sensitivity of the data it safeguarded and serious risk presented by insufficient security practices, Defendant did not take sufficient steps to ensure that its systems were secure. Defendant knew or should have known about the risks to the data it stored and processed, and the critical importance of adequate security measures in the face of increasing threats.

17. Plaintiff brings this action on behalf of all persons whose Private Information was compromised as a result of Defendant's failure to: (i) adequately protect the Private Information of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; (iii) effectively secure hardware containing protected Private Information using reasonable and adequate security procedures free of vulnerabilities and incidents; and (iv) timely notify Plaintiff and Class Members of the Data Breach. Defendant's conduct amounts to at least negligence and violates federal and state statutes.

18. Plaintiff brings this action individually and on behalf of a Nationwide Class of similarly situated individuals against Defendant for negligence and unjust enrichment.

19. Plaintiff seeks to remedy these harms and prevent any future data compromise on behalf of themselves, and all similarly situated persons whose personal data was compromised and stolen as a result of the Data Breach and who remain at risk due to Defendant's inadequate data security practices.

---

[3] Home Page, Xsolis, www.xsolis.com/ (last visited June 11, 2026).

## THE PARTIES

*Plaintiff Deborah Todd*

20.     Plaintiff Todd is a natural person and citizen of Virginia, where she intends to stay.

21.     Plaintiff Todd provided her Private Information to Defendant's customer for the purpose of receiving healthcare treatment and services.  Plaintiff Todd's Private Information was stored and maintained by Defendant.

*Defendant Xsolis Inc.*

22.     Defendant is a corporation incorporated under the laws of Delaware, having its principal place of business located at 4031 Aspen Grove Drive, Suite 500, Franklin, Tennessee, 37067.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. At least one Class Member is diverse from Defendant, including Plaintiff Todd, and there are over 100 putative Class Members. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

24.     This Court has personal jurisdiction over Defendant because Defendant's principal place of business is located in this State, regularly conduct business in this State, and thus, has sufficient minimum contacts in this State. Defendant intentionally avails itself of the markets within this State to render the exercise of jurisdiction by this Court just and proper.

25.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District. Defendant is also headquartered in this District, maintains Plaintiff's and Class Members' PII in this District, and

has caused harm to Plaintiff and Class Members from or within this District.

## FACTUAL ALLEGATIONS

26. Plaintiff and Class Members provided their Private Information to Defendant's customer with the reasonable expectation and understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

27. As a result of collecting and storing the Private Information of Plaintiff and Class Members for its own financial benefit, Defendant had a continuous duty to adopt and employ reasonable measures to protect Plaintiff and the Class Members' Private Information from disclosure to third parties.

28. Consumers, in general, demand that businesses that require highly sensitive Private Information will provide security to safeguard their Private Information, especially when Social Security numbers are involved.

29. Defendant had a duty to adopt reasonable measures to protect Plaintiff's and Class Members' PII from unauthorized disclosure to third parties.

30. On or after June 5, 2026—over four months after Defendant was made aware of the Data Breach—Plaintiff and Class Members were finally notified of Defendant's Data Breach.

31. Time is of the essence when trying to protect against identity theft after a data breach, so early notification is critical.

32. The Data Breach Notices do not provide details about the root cause of the Data Breach, the vulnerabilities exploited, the criminals responsible for the breach, and the remedial measures undertaken to ensure such a breach does not occur again. To date, Defendant has not explained or disclosed these facts to Plaintiff and Class Members.

33. Without these details, Plaintiff's and Class Members' ability to mitigate harms

6

resulting from the Data Breach is severely diminished.

34. The Data Breach notice Plaintiff received offers no substantive steps to help victims like Plaintiff and Class Members to protect themselves other than providing temporary, non-automatic credit monitoring and identity protection, which is woefully inadequate considering the lifelong increased risk of fraud and identity theft that Plaintiff and Class Members now face as a result of the Data Breach.

35. Moreover, offering credit monitoring offer and advice to Plaintiff and Class Members squarely place the burden on Plaintiff and Class Members, rather than on Defendant, to monitor and report suspicious activities to law enforcement. In other words, Defendant expects Plaintiff and Class Members to protect themselves from its tortious acts resulting from the Data Breach. Rather than automatically enrolling Plaintiff and Class Members in credit monitoring services upon discovery of the Data Breach, Defendant merely sent instructions to Plaintiff and Class Members about actions they could affirmatively take to protect themselves.

36. Defendant failed to take precautions designed to keep individuals' Private Information secure.

37. While Defendant sought to minimize the damage caused by the Data Breach, it cannot and has not denied that there was unauthorized access to the sensitive Private Information of Plaintiff and Class Members.

38. Individuals affected by the Data Breach are, and remain, at risk that their data will be sold or listed on the dark web and, ultimately, illegally used in the future.

***Defendant Failed to Comply with the FTC Act***

39. Defendant was prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) and analogous state law from engaging in unfair or deceptive acts or practices.

The Federal Trade Commission (the "FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

40. The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

41. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[4]

42. The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

---

[4] FTC, *Protecting Personal Information: A Guide for Business* (2016), https://www.ftc.gov/system /files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited June 11, 2026).

*Defendant Failed to Comply with HIPAA*

43.     Defendant is a covered entity of business associate under HIPAA (45 C.F.R. § 160.103) and are required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

44.     Defendant is subject to the rules and regulations for safeguarding electronic forms of medical information pursuant to the Health Information Technology Act ("HITECH").[5] *See* 42 U.S.C. §17921, 45 C.F.R. § 160.103.

45.     "Electronic protected health information," which is protected under state and federal law, is defined as "individually identifiable health information . . . that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

46.     Guidance from the United States Department of Health and Human Services ("HHS") instructs healthcare providers that even patient status alone is protected by HIPAA. In *Guidance regarding Methods for De-identification of Protected Health Information in Accordance with the Health Insurance Portability and Accountability Act Privacy Rule*, HHS instructs:

> Identifying information alone, such as personal names, residential addresses, or phone numbers, would not necessarily be designated as PHI. For instance, if such Information was reported as part of a publicly accessible data source, such as a phone book, then this information would not be PHI because it is not related to health data. . . . If such information was listed with health condition, health care provision, or payment data, such as an indication that the individual was treated at a certain clinic, then this information would be PHI.[6]

---

[5] HIPAA and HITECH work in tandem to provide guidelines and rules for maintaining protected health information. HITECH references and incorporates HIPAA.

[6] HHS Off. for Civil Rights, *Guidance Regarding Methods for De-identification of Protected Health Information in Accordance with the Health Insurance Portability and Accountability Act*

9

47. HIPAA's Security Rule requires Defendant to do the following:

   a. Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

   b. Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

   c. Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

   d. Ensure compliance by its workforce.

48. HIPAA also requires Defendant to "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e). Additionally, Defendant is required under HIPAA to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

49. HIPAA and HITECH also obligated Defendant to implement policies and procedures to prevent, detect, contain, and correct security violations, and to protect against uses or disclosures of electronic protected health information that are reasonably anticipated but not permitted by the privacy rules. *See* 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); *see also* 42 U.S.C. § 17902.

50. The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, also requires

---

*(HIPAA) Privacy Rule*, at 5 (Nov. 26, 2012), https://www.hhs.gov/sites/default/files/ocr/privacy/hipaa/understanding/coveredentities/De-identification/hhs_deid_guidance.pdf (last accessed June 11, 2026).

Defendant to provide notice of the Data Breach to each affected individual "without unreasonable delay and in no case later than 60 days following discovery of the breach."[7]

51. HIPAA requires a covered entity to have and apply appropriate sanctions against members of its workforce who fail to comply with the privacy policies and procedures of the covered entity or the requirements of 45 C.F.R. Part 164, Subparts D or E. *See* 45 C.F.R. § 164.530(e).

52. HIPAA requires a covered entity to mitigate, to the extent practicable, any harmful effect that is known to the covered entity of a use or disclosure of protected health information in violation of its policies and procedures or the requirements of 45 C.F.R. Part 164, Subpart E by the covered entity or its business associate. *See* 45 C.F.R. § 164.530(f).

53. HIPAA also requires the HHS Office of Civil Rights ("OCR"), to issue annual guidance documents on the provisions of the HIPAA Security Rule. *See* 45 C.F.R. §§ 164.302-164.318. For example:

> HHS has developed guidance and tools to assist HIPAA covered entities in identifying and implementing the most cost effective and appropriate administrative, physical, and technical safeguards to protect the confidentiality, integrity, and availability of e-PHI and comply with the risk analysis requirements of the Security Rule."[8]

The list of resources includes a link to guidelines set by the National Institute of Standards and Technology (NIST), which OCR says "represent the industry standard for good business practices with respect to standards for securing e-PHI."[9]

---

[7] *See* HHS, *Breach Notification Rule* (last reviewed July 26, 2013), https://www.hhs.gov/hipaa/for-professionals/breach-notification/index.html (last accessed June 11, 2026).

[8] HHS, *Security Rule Guidance Material* (last reviewed Apr. 8, 2026), http://www.hhs.gov/hipaa/for-professionals/security/guidance/index.html (last accessed June 11, 2026).

[9] HHS, *Guidance on Risk Analysis* (last reviewed Sept. 26, 2025), https://www.hhs.gov/hipaa/for-professionals/security/guidance/guidance-risk-analysis/index.html (last accessed June 11, 2026).

*The Data Breach Was Foreseeable*

54. Data security breaches have dominated the headlines for the last two decades. As a result, members of the general public are aware of the risks of data breaches, and are familiar with other, mainstream, large-scale cybersecurity breaches: Target,[10] Yahoo,[11] Marriott International,[12] Chipotle, Chili's, Arby's,[13] and others.[14]

55. There have been numerous high profile cybersecurity incidents at other healthcare partner and provider companies, including American Medical Collection Agency (25 million patients, March 2019), University of Washington Medicine (974,000 patients, December 2018), Florida Orthopedic Institute (640,000 patients, July 2020), Wolverine Solutions Group (600,000 patients, September 2018), Oregon Department of Human Services (645,000 patients, March 2019), Elite Emergency Physicians (550,000 patients, June 2020), Magellan Health (365,000 patients, April 2020), and BJC Health System (286,876 patients, March 2020), Defendant knew or should have known that its electronic records would be targeted by cybercriminals.

56. One study analyzing data breaches that were reported between the years 2005 and

---

[10] Michael Kassner, *Anatomy of the Target data breach: Missed Opportunities and lessons learned*, ZDNET (Feb. 2, 2015), https://www.zdnet.com/article/anatomy-of-the-target-data-breach-missed-opportunities-and-lessons-learned/ (last accessed June 11, 2026).

[11] Martyn Williams, *Inside the Russian hack of Yahoo: How they did it*, CSO (Oct. 4, 2017), https://www.csoonline.com/article/3180762/inside-the-russian-hack-of-yahoo-how-they-did-it.html (last accessed June 11, 2026).

[12] Patrick Nohe, *The Marriot Data Breach: Full Autopsy*, HashedOut by The SSL Store (Mar. 22, 2019), https://www.thesslstore.com/blog/autopsying-the-marriott-data-breach-this-is-why-insurance-matters/ (last accessed June 11, 2026).

[13] Alfred Ng, *FBI nabs alleged hackers in theft of 15m credit cards from Chipotle, others*, CNET (Aug. 1, 2018), https://www.cnet.com/news/fbi-nabs-alleged-hackers-in-theft-of-15m-credit-cards-from-chipotle-others/?ftag=CMG-01-10aaa1b (last accessed June 11, 2026).

[14] *See, e.g.*, John Leyden, *et al.*, *The 20 biggest data breaches of the 21st Century*, CSO (June 12, 2025), https://www.csoonline.com/article/2130877/the-biggest-data-breaches-of-the-21st-century.html (last accessed June 11, 2026).

2019 found that "the healthcare (MED) sector in both the time frames from (2005 to 2019) and (2015 to 2019) has faced the highest number of data breaches. Out of the 6355 breach incidents reported during 2005–2019, 3912 were recorded in the healthcare industry alone. This accounts for 61.55% of the total."[15]

57. Other publications have confirmed that, "Our healthcare data breach statistics clearly show an upward trend in data breaches since 2009, when OCR [the HHS Office for Civil Rights] first started publishing data breach summaries on its website . . . . There was a sharp increase in data breaches between 2018 and 2021, with data breaches doubling in just three years as cybercriminals aggressively adopted ransomware and actively targeted the healthcare sector. . . . [In 2025] a new annual record was set with 772 large data breaches reported."[16]

58. Defendant was also on notice of the importance of utilizing data encryption for Private Information, including that belonging to Plaintiff and Class Members. Moreover, Defendant knew it maintained private Information in its systems and yet, upon information and belief, Defendant did not encrypt these systems or the information contained within them.

### Cyber Criminals Will Use Plaintiff's and Class Members' Private Information to Defraud Them

59. Plaintiff's and Class Members' Private Information is of great value to hackers and cyber criminals, and their data stolen in the Breach has been used and will continue to be used in a variety of sordid ways for criminals to exploit them and to profit from their misfortune.

---

[15] Adil Hussain Seh, *et al.*, *Healthcare Data Breaches: Insights and Implications*, Healthcare (13 May, 2020), doi:10.3390/healthcare8020133, https://www.ncbi.nlm.nih.gov/pmc/articles/ PMC7349636/#B5-healthcare-08-00133/ (last accessed June 11, 2026).

[16] Steve Alder, *Healthcare Data Breach Statistics – Updated for 2026*, The HIPAA Journal (June 4, 2026), https://www.hipaajournal.com/healthcare-data-breach-statistics/ (last accessed June 11, 2026).

13

60.     Each year, identity theft causes billions of dollars of losses to victims in the United States.[17] For example, with the Private Information stolen in the Data Breach, identity thieves can open financial accounts, apply for credit, collect government benefits, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or undocumented immigrants, steal benefits, give breach victims' names to police during arrests, and many other harmful forms of identity theft.[18] These criminal activities have and will result in devastating financial and personal losses to Plaintiff and Class members.

61.     Private Information is such a valuable commodity to identity thieves that once it has been compromised, criminals will use it and trade the information on the cyber black-market for years.[19]

62.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because there, victims can cancel or close credit and debit card accounts.

63.     Social Security numbers and names, as compromised in this Data Breach, are impossible to "close" and difficult, if not impossible, to change. They are worth more than ten times the value of credit card information on the black market.[20]

---

[17] Ins. Info. Inst., *Facts + Statistics: Identity theft and cybercrime*, https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing the FBI's annual Internet Crime Report) (last accessed June 11, 2026).

[18] John Egan, *What Should I Do if My Driver's License Number Is Stolen?*, Experian (June 13, 2024), https://www.experian.com/blogs/ask-experian/what-should-i-do-if-my-drivers-license-number-is-stolen/ (last accessed June 11, 2026).

[19] GAO, *Report to Congressional Requesters: Personal Information*, at 29 (July 5, 2007), https://www.gao.gov/assets/gao-07-737.pdf (last accessed June 11, 2026).

[20] Tim Greene, *Anthem hack: Personal data stolen sells for 10x price of stolen credit card numbers*, NetworkWorld (Feb. 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed June 11, 2026).

64. These risks are both certainly impending and substantial. As the FTC has reported, if hackers get access to personally identifiable information, they will use it.[21]

65. Hackers may not use the accessed information right away. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[22]

66. As described above, identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit.[23]

67. With this Data Breach, identity thieves have already started to prey on the victims, and one can reasonably anticipate this will continue.

68. In fact, as a direct and proximate result of the Data Breach, Plaintiff and Class Members have suffered, and have been placed at an imminent, immediate, and continuing increased risk of suffering, harm from fraud and identity theft. Plaintiff and Class Members must now take the time and effort and spend the money to mitigate the actual and potential impact of the Data Breach on their everyday lives, including purchasing identity theft and credit monitoring services, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, healthcare providers, closing or modifying financial accounts, and closely reviewing

---

[21] Ari Lazarus, *How fast will identity thieves use stolen info?*, Military Consumer (May 24, 2017), https://www.militaryconsumer.gov/blog/how-fast-will-identity-thieves-use-stolen-info (last accessed June 11, 2026).

[22] GAO, *Report to Congressional Requesters: Personal Information*, at 29 (July 5, 2007), https://www.gao.gov/assets/gao-07-737.pdf (last accessed June 11, 2026).

[23] FTC, *Guide for Assisting Identity Theft Victims* (Sept. 2013), https://sedm.org/Forms/09-Procs/pdf-0119-guide-assisting-id-theft-victims.pdf (last accessed June 11, 2026).

and monitoring bank accounts, credit reports, and health insurance account information for unauthorized activity for years to come.

69. Plaintiff and Class Members have suffered, and continue to suffer, actual harms for which they are entitled to compensation, including:

    a. Trespass, damage to, and theft of their personal property including Private Information;

    b. Improper disclosure of their Private Information;

    c. The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Private Information being placed in the hands of criminals and having been already misused;

    d. The imminent and certainly impending risk of having their Private Information used against them by spam callers to defraud them;

    e. Damages flowing from Defendant's untimely and inadequate notification of the data breach;

    f. Loss of privacy suffered as a result of the Data Breach;

    g. Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the data breach;

    h. Ascertainable losses in the form of deprivation of the value of individuals' personal information for which there is a well-established and quantifiable national and international market;

    i. The loss of use of and access to their credit, accounts, and/or funds;

    j. Damage to their credit due to fraudulent use of their Personal Private Information; and

    k. Increased cost of borrowing, insurance, deposits and other items which are adversely affected by a reduced credit score.

70. Moreover, Plaintiff and Class Members have an interest in ensuring that their sensitive Private Information, which remains in the possession of Defendant, is protected from further breaches by the implementation of industry standard and statutorily compliant security

16

measures and safeguards. Defendant has shown itself to be incapable of protecting Plaintiff's and Class Members' Private Information.

71.    Plaintiff and Class Members are desperately trying to mitigate the damage that Defendant has caused them but, given the Private Information Defendant made accessible to hackers, they are certain to incur additional damages. Because identity thieves have their Private Information, Plaintiff and all Class Members will need to have identity theft monitoring protection for the rest of their lives.

72.    None of this should have happened. The Data Breach was preventable.

### *Defendant Could Have Prevented the Data Breach but Failed to Adequately Protect Plaintiff's and Class Members' Private Information*

73.    Data breaches are preventable.[24] Lucy Thompson states in the *Data Breach and Encryption Handbook* that "[i]n almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[25] She adds that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[26] "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures . . . Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*."[27]

---

[24] Lucy L. Thompson, *Despite the Alarming Trends, Data Breaches Are Preventable*, in *Data Breach and Encryption Handbook* (Lucy Thompson, ed., 2012).

[25] *Id.* at 17.

[26] *Id.* at 28.

[27]*Id.*

74. As discussed above, Defendant failed to comply with the requirements of federal laws like the FTC Act and HIPAA, as well as analogous state laws.

75. Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including by failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established frameworks for reasonable cybersecurity readiness, and by failing to comply with other industry standards for protecting Plaintiff's and Class Members' Private Information, resulting in the Data Breach.

76. Defendant was entrusted with properly holding, safeguarding, and protecting against unlawful disclosure of Plaintiff's and Class Members' Private Information.

77. Many failures laid the groundwork for the success ("success" from a cybercriminal's viewpoint) of the Data Breach, starting with Defendant's failure to incur the costs necessary to implement adequate and reasonable cyber security procedures and protocols necessary to protect Plaintiff's and Class Members' Private Information.

78. Defendant was at all times fully aware of its obligation to protect the Private Information of Plaintiff and Class Members. Defendant was also aware of the significant repercussions that would result from its failure to do so.

79. Defendant maintained the Private Information in a reckless manner. In particular, the Private Information was maintained and/or exchanged, unencrypted, in Defendant's systems and were maintained in a condition vulnerable to cyberattacks.

80. Defendant knew, or reasonably should have known, of the importance of

18

safeguarding Private Information and of the foreseeable consequences that would occur if Plaintiff's and Class Members' Private Information was stolen, including the significant costs that would be placed on Plaintiff and Class members as a result of a breach.

81. The mechanism of the cyberattack and potential for improper disclosure of Plaintiff's and Class Members' Private Information was a known risk to Defendant, and thus Defendant was on notice that failing to take necessary steps to secure Plaintiff's and Class Members' Private Information from those risks left that information in a dangerous condition.

82. Defendant disregarded the rights of Plaintiff and Class Members by, *inter alia*, (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its business email accounts were protected against unauthorized intrusions; (ii) failing to disclose that it did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiff's and Class Members' Private Information; (iii) failing to take standard and reasonably available steps to prevent the Data Breach; (iv) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (v) failing to provide Plaintiff and Class Members with prompt and accurate notice of the Data Breach.

## CLASS ACTION ALLEGATIONS

83. Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

84. Plaintiff brings all claims as class claims under Federal Rule of Civil Procedure 23. Plaintiff asserts all claims on behalf of the Class, defined as follows:

> **All persons residing in the United States whose Private Information was compromised as a result of the Data Breach.**

85. Plaintiff reserves the right to amend the above definition or to propose subclasses

in subsequent pleadings and motions for class certification.

86.     The proposed Class meets the requirements of Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and (c)(4).

87.     **Numerosity:** The proposed Class is believed to be so numerous that joinder of all members is impracticable. The proposed Subclass is also believed to be so numerous that joinder of all members would be impractical.

88.     **Typicality:** Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class were injured through Defendant's uniform misconduct. The same event and conduct that gave rise to Plaintiff's claims are identical to those that give rise to the claims of every other Class Member because Plaintiff and each member of the Class had their sensitive Private Information compromised in the same way by the same conduct of Defendant.

89.     **Adequacy:** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the Class that Plaintiff seeks to represent; Plaintiff has retained counsel competent and highly experienced in data breach class action litigation; and Plaintiff and Plaintiff's counsel intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and Plaintiff's counsel.

90.     **Superiority:** A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and the Class. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult, if not impossible, for members of the Class individually to effectively redress Defendant's wrongdoing. Even if Class Members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation

increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

91. **<u>Commonality and Predominance</u>:** There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

a. Whether Defendant engaged in the wrongful conduct alleged herein;

b. Whether Defendant failed to adequately safeguard Plaintiff and the Class's Private Information;

c. Whether Defendant's email and computer systems and data security practices used to protect Plaintiff's and Class Members' Private Information violated the FTC Act, HIPAA, and/or state laws and/or Defendant's other duties discussed herein;

d. Whether Defendant owed a duty to Plaintiff and the Class to adequately protect their Private Information, and whether it breached this duty;

e. Whether Defendant knew or should have known that its computer and network security systems and business email accounts were vulnerable to a data breach;

f. Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the Data Breach;

g. Whether Defendant failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiff and the Class;

h. Whether Defendant continues to breach duties to Plaintiff and the Class;

i. Whether Plaintiff and the Class suffered injury as a proximate result of Defendant's negligent actions or failures to act;

j.      Whether Plaintiff and the Class are entitled to recover damages, equitable relief, and other relief;

k.      Whether injunctive relief is appropriate and, if so, what injunctive relief is necessary to redress the imminent and currently ongoing harm faced by Plaintiff and members of the Class and the general public; and,

l.      Whether Defendant's actions alleged herein constitute gross negligence.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (On behalf of Plaintiff and the Class)

92.      Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

93.      Defendant solicited, gathered, and stored Plaintiff's and Class Members' Private Information in its course of conducting business. Plaintiff and Class Members expect that any entity, such as Defendant, handling their sensitive Private Information would adequately safeguard their information.

94.      By accepting and storing Plaintiff's and Class Members' Private Information, Defendant undertook and owed Plaintiff and Class Members a duty to exercise reasonable care to secure and safeguard their Private Information.

95.      Accordingly, Defendant had duties to protect and safeguard Plaintiff's and Class Members' Private Information, including:

a.      To exercise reasonable care in designing, implementing, maintaining, monitoring, and testing Defendant's networks, systems, email accounts, protocols, policies, procedures and practices to ensure that Plaintiff's and Class Members' Private Information was adequately secured from impermissible release, disclosure, and publication;

b.      To protect Plaintiff's and Class Members' Private Information in its possession by using reasonable and adequate security procedures and systems;

c.	To implement processes to quickly detect a data breach, security incident, or intrusion involving its business email system, networks and servers; and

d.	To promptly notify Plaintiff and Class Members of any data breach, security incident, or intrusion that affected or may have affected their Private Information;

e.	To exercise appropriate clearinghouse practices to remove Private Information it was no longer required to retain under regulations.

96.	The duties owed are independent from and untethered by any contract.

97.	Defendant was aware of the sensitive nature of the Private Information, the types of harm that Plaintiff and Class Members could and would suffer if the Private Information was wrongfully disclosed, and the importance of adequate security. Moreover, Defendant was aware that cybercriminals routinely target large corporations through cyberattacks to steal sensitive personal information.

98.	Plaintiff and Class Members were the foreseeable victims of any inadequate safety and security practices on the part of Defendant. Plaintiff and Class Members had no ability to protect their Private Information that was in Defendant's possession. As such, a special relationship existed between Defendant and Plaintiff and the Class.

99.	Defendant owed Plaintiff and Class Members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and the Class when obtaining, storing, using, and managing personal information, including taking action to reasonably safeguard such data and providing notification to Plaintiff and Class Members of any breach in a timely manner so that appropriate action could be taken to minimize losses.

100.	Defendant's duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place

23

to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures also have recognized the existence of a specific duty to reasonably safeguard personal information.

101.    Moreover, Defendant owed Plaintiff and Class Members a duty because applicable industry standards mandate require that Defendant protect its employees', customers', and patients' confidential Private Information.

102.    In addition to its duties under common law, Defendant had additional duties arising under, or informed by, the FTC Act (15 USC 45). The harms which occurred as a result of Defendant's failure to observe its duties under these statutes are the types of harm that these statutes are intended to prevent. Plaintiff and the Class are also within the class of persons that these statutes are intended to protect.

103.    Only Defendant was in the position to ensure that its systems and protocols were sufficient to protect the Private Information Plaintiff and Class Members had entrusted to it.

104.    Through Defendant's acts and omissions described herein, including but not limited to Defendant's failure to protect the Private Information of Plaintiff and Class Members from being stolen and misused, Defendant unlawfully breached its duty to use reasonable care to adequately protect and secure the Private Information of Plaintiff and Class Members while it was within Defendant's possession and control.

105.    Further, through its failure to provide timely and clear notification of the Data Breach to Plaintiff and Class Members, Defendant prevented Plaintiff and Class Members from taking meaningful, proactive steps toward securing their Private Information and mitigating damages.

106. Defendant breached its duty of care by failing to adequately protect Plaintiff's and Class Members' Private Information. Defendant breached its duties by, among other things:

    a. Failing to exercise reasonable care in obtaining, retaining securing, safeguarding, deleting, and protecting the Private Information in its possession;

    b. Failing to protect the Private Information in its possession by using reasonable and adequate security procedures and systems;

    c. Failing to adequately and properly audit, test, and train its employees to avoid phishing emails;

    d. Failing to use adequate email security systems, including industry standard SPAM filters, DMARC enforcement, and/or Sender Policy Framework enforcement to protect against phishing emails;

    e. Failing to adequately and properly audit, test, and train its employees regarding how to properly and securely transmit and store Private Information;

    f. Failing to adequately train its employees to not store Private Information longer than absolutely necessary for the specific purpose that it was sent or received;

    g. Failing to apply appropriate clearinghouse practices to remove Plaintiff's and Class Members' Private Information once it was no longer necessary to retain;

    h. Failing to consistently enforce security policies aimed at protecting Plaintiff and the Class's Private Information;

    i. Failing to implement processes to quickly detect data breaches, security incidents, or intrusions;

    j. Failing to promptly notify Plaintiff and Class Members of the Data Breach that affected their Private Information.

107. Defendant breached its duties to Plaintiff and Class Members under the FTC Act, HIPAA, and Tennessee law by failing to, inter alia, implement and maintain appropriate or reasonable administrative, technical, and physical safeguards to protect the privacy of Plaintiff's

and Class Members' Private Information, and by failing to provide prompt and specific notice without reasonable delay.

108. Defendant's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

109. As a proximate and foreseeable result of Defendant's grossly negligent conduct, Plaintiff and Class Members have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

110. As a result of the Data Breach, Plaintiff and Class Members have spent time, effort, and money to mitigate the actual and potential impact of the Data Breach on their lives, including but not limited to, responding to fraudulent activity, closely monitoring bank account activity, and examining credit reports and statements.

111. Defendant's wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence. The damages Plaintiff and Class Members have suffered (as alleged above) and will continue to suffer were and are the direct and proximate result of Defendant's grossly negligent conduct.

112. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered, and continue to suffer, damages arising from the Data Breach, as alleged above. Plaintiff and the Class have suffered injury and are entitled to actual and punitive damages in amounts to be proven at trial.

**COUNT II**
**UNJUST ENRICHEMNT**
**(On behalf of Plaintiff and the Class)**

113. Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

114.	Plaintiff and Class Members bring this claim in the alternative to all other claims and remedies at law.

115.	Defendant collected, maintained, and stored the Private Information of Plaintiff and Class Members as part of its business operations and to gain profits. As such, Defendant had direct knowledge of the monetary benefits conferred upon it.

116.	Defendant, by way of its affirmative actions and omissions, including its knowing violations of its express or implied contracts with the entities that collected Plaintiff's and Class Members' Private Information, knowingly and deliberately enriched itself by saving the costs it reasonably and contractually should have expended on reasonable data privacy and security measures to secure Plaintiff's and Class Members' Private Information.

117.	Instead of providing a reasonable level of security, training, and protocols that would have prevented the Data Breach, as described above and as is common industry practice among companies entrusted with similar Private Information, Defendant, upon information and belief, instead consciously and opportunistically calculated to increase its own profits at the expense of Plaintiff and Class Members.

118.	Defendant failed to implement—or adequately implement—data security practices, procedures, and programs to secure sensitive Private Information, including without limitation those industry standard data security practices, procedures, and programs discussed herein.

119.	As a direct and proximate result of Defendant's decision to profit rather than provide adequate data security, Plaintiff and Class Members suffered and continue to suffer actual damages, including (i) the amount of the savings and costs Defendant reasonably and contractually should have expended on data security measures to secure Plaintiff's and Class

27

Members' Private Information, (ii) time and expenses mitigating harms, (iii) diminished value of Private Information, (iv) loss of privacy, (v) harms as a result of identity theft; and (vi) an increased risk of future identity theft.

120. Defendant, upon information and belief, has therefore engaged in opportunistic and unethical conduct by profiting from conduct that it knew would create a significant and highly likely risk of substantial and certainly impending harm to Plaintiff and Class Members in direct violation of their interests. As such, it would be inequitable, unconscionable, and unlawful to permit Defendant to retain the benefits it derived through its wrongful conduct.

121. Accordingly, Plaintiff and Class Members are entitled to relief in the form of restitution and disgorgement of all ill-gotten gains, which should be put into a common fund to be distributed to Plaintiff and Class Members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of all Class Members, respectfully requests that the Court grant her the following relief:

A. An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing her as Class Representative and the undersigned as Class Counsel;

B. A judgment in favor of Plaintiff and the Class against Defendant awarding them appropriate monetary relief, including actual damages, restitution, attorney fees, expenses, costs, and pre-judgment and post-judgment interest as allowed by law.

C. An order providing injunctive and other equitable relief as necessary to protect the interests of the Class and the general public as requested herein, including, but not limited to:

28

i. Ordering that Defendant engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

ii. Ordering that Defendant engage third-party security auditors and internal personnel to run automated security monitoring;

iii. Ordering that Defendant audit, test, and train its security personnel regarding any new or modified procedures;

iv. Ordering that Defendant segment customer data by, among other things, creating firewalls and access controls so that if one area of Defendant's systems is compromised, hackers cannot gain access to other portions of Defendant's systems;

v. Ordering that Defendant cease transmitting Private Information via unencrypted email;

vi. Ordering that Defendant cease storing Private Information in email accounts;

vii. Ordering that Defendant purge, delete, and destroy in a reasonably secure manner customer data not necessary for its provisions of services;

viii. Ordering that Defendant conduct regular database scanning and securing checks;

ix. Ordering that Defendant routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

x. Ordering Defendant to meaningfully educate its current, former, and prospective employees and subcontractors about the threats faced as a result of the loss of financial and personal information to third parties, as well as the steps they must take to protect against such occurrences;

D. An order requiring Defendant to pay the costs involved in notifying the Class members about the certification of the Class, and any other matters as may be required and ordered by the Court;

E. An award of such other and further relief as this Court may deem just and proper.

29

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

DATED: June 11, 2026

/s/ Alexandra M. Honeycutt
Alexandra M. Honeycutt (#039617)
**MILBERG, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: 865-247-0080
Email: ahoneycutt@milberg.com

Mariya Weekes (*pro hac vice* forthcoming)
**MILBERG, PLLC**
333 SE 2nd Avenue, Suite 2000
Miami, FL 33131
Tel: (866) 252-0878
mweekes@milberg.com

Terence R. Coates (*pro hac vice* forthcoming)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
*tcoates@msdlegal.com*

*Counsel for Plaintiff and the Proposed Class*